*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 08a0421p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,

> *Plaintiff-Appellee,*

*v.*

No. 07-3935

THOMAS L. MCCAULEY,

> *Defendant-Appellant.*

---

Appeal from the United States District Court
for the Southern District of Ohio at Dayton.
No. 06-00154—Walter H. Rice, District Judge.

Argued: October 31, 2008

Decided and Filed: November 25, 2008

Before: KENNEDY, SUTTON, and McKEAGUE, Circuit Judges.

---

## COUNSEL

**ARGUED:** Andrew J. King, LAW OFFICES, Columbus, Ohio, for Appellant. Benjamin C. Glassman, ASSISTANT UNITED STATES ATTORNEY, Cincinnati, Ohio, for Appellee. **ON BRIEF:** Andrew J. King, LAW OFFICES, Columbus, Ohio, for Appellant. Sheila Gay Lafferty, ASSISTANT UNITED STATES ATTORNEY, Dayton, Ohio, for Appellee.

---

## OPINION

---

KENNEDY, Circuit Judge. Thomas McCauley appeals the district court's denial of his motion to suppress evidence discovered during a search of his residence and vehicle, arguing that police did not have reasonable suspicion to stop his vehicle and that his wife did not validly consent to the search of their residence and vehicle. He further contends that, even if he is convicted, his prior offenses do not subject him to sentencing under the Armed Career Criminals Act. 18 U.S.C. § 924(e). Upon review we find that reasonable suspicion that appellant was involved in criminal activity supported the stop and that his wife validly consented to a search of his residence and vehicle. Because his prior offenses constitute "occasions different" under 18 U.S.C. § 924(e), he was properly sentenced under the ACCA. Accordingly, we AFFIRM the district court's judgment.

## BACKGROUND

Just after midnight on June 19, 2006, Deputy Douglas Phillips of the Montgomery County Sheriff's Office was dispatched to recover a stolen vehicle on Riverside Drive in Dayton, Ohio. J.A.

at 66. While he was on the scene, a vehicle pulled up behind him and a male and female exited the vehicle. *Id.* The female, later identified as Laurie Mitchell, was "very hysterical" and "crying," and told Deputy Phillips that a man whom she knew had just chased her with a gun. She described her assailant and told Deputy Phillips that he had been driving a small black SUV. She further related that the man lived on Riverside Drive, south of their current location. Deputy Phillips, based on this information, contacted his dispatch and made a broadcast in which he described the suspect as an armed black male driving a small black SUV.

Officer Helthinstine, a Five Rivers Metro Parks park ranger in uniform and driving a marked police car, responded that he was on duty in the area and had just passed the deputy's location. Officer Helthinstine pulled off the road a little further up Riverside Drive. A few minutes later, Officer Helthinstine received another broadcast from Deputy Phillips who relayed that he had observed a vehicle matching the description of the suspect vehicle drive past him, heading south on Riverside Drive. A few seconds later, Officer Helthinstine, who was on Riverside Drive, observed a small black SUV drive past him. He pulled up behind it, activating his lights in an attempt to stop the vehicle.

Officer Helthinstine chased the vehicle a short distance until it entered the driveway of a residence at 2219 Riverside Drive and pulled into a garage. As Officer Helthinstine pulled up directly behind the SUV, the garage door began to close. Before the door closed completely, the officer observed a black male, later identified as appellant, exiting the front passenger side door. Officer Helthinstine exited the cruiser and ordered him to stop, but the appellant ignored him and ran inside the house through a door inside the garage, yelling loudly.

Seconds later, the garage door reopened and the officer saw Denise McCauley, appellant's wife, exit the driver's side door of the SUV. Mrs. McCauley identified the man who ran into the house as her husband. As the officer was speaking to her, appellant exited the house and, continuing to yell and curse, approached the officer. Officer Helthinstine pointed his weapon at appellant and ordered him to raise his hands. Within three minutes, additional law enforcement officers arrived on the scene, secured appellant with handcuffs, and took him into custody.

Montgomery County Sheriff's Office Detective Matthew Snyder was among the officers who had arrived. He asked appellant's wife if anyone was inside the house. The wife, whose demeanor was "cooperative," replied that no one else was inside and added that the officers could go inside and check. In response, Detective Snyder and Officer Helthinstine entered the residence. Almost immediately, Detective Snyder observed narcotics sitting out in plain view on top of a bar and informed Officer Helthinstine.

Officer Heiser, a Dayton Police Department Officer, arrived at the scene and spoke with appellant's wife. Officer Heiser then observed Deputy Snyder ask appellant's wife if the vehicle belonged to her and if she would grant the officers permission to look inside the vehicle for weapons. She responded to both questions in the affirmative. Officer Heiser looked inside the vehicle and recovered a firearm from the back seat.

Officers arrested appellant and transported him to the Dayton police station, where he admitted both orally and in writing to possessing a firearm. Officers also interviewed appellant's wife, who confirmed that she had consented to the search of both her residence and vehicle.

On September 12, 2006, the grand jury for the Southern District of Ohio returned a two-count indictment against appellant charging him with (1) possession of a firearm by a felon in violation of 18 U.S.C. 922(g)(1); and (2) possession of cocaine in violation of 21 U.S.C. 844. Two months later, the government filed a notice of enhanced sentencing under the Armed Career Criminal Act (ACCA) based on appellant's prior convictions. On March 12, 2007, appellant filed

a Motion to Suppress seeking to suppress evidence recovered during the search of his residence and vehicle. The district court judge denied the motion following an evidentiary hearing held the following day. On March 15, 2007, appellant entered conditional guilty pleas to both counts of the indictment pursuant to a plea agreement which preserved appellant's right to appeal the suppression ruling.

The Presentence Investigation Report (PSR) prepared by the United States Probation Office indicated that appellant would be sentenced under the ACCA and was thus subject to a minimum of 15 years of imprisonment.[1] Applying Sentencing Guideline 4B1.4, the Guideline provision implementing the ACCA, the PSR assigned appellant a total offense level of 31 and a criminal history category of IV, resulting in a sentencing range of 180 to 199 months of imprisonment. On June 22, 2007, appellant objected pro se to being sentenced under the ACCA, arguing that his two burglary convictions could not qualify as two separate felonies because he was sentenced for them both on the same day. J.A. at 57. The district court disagreed and found that fact irrelevant for purposes of determining qualifying offenses under the ACCA. On July 16, 2007, the district court sentenced appellant on count one to a mandatory 15-year term of imprisonment followed by 5 years of supervised release and on count two to time served. Appellant timely appealed.

## ANALYSIS

### I. The district court properly denied appellant's motion to suppress.

A. *Standard of Review*

In reviewing a district court's ruling on a motion to suppress, the appellate court must consider the evidence in the light most favorable to the district court's decision. *United States v. Moncivais*, 401 F.3d 751, 754 (6th Cir. 2005). "In an appeal of the denial of a motion to suppress, we review the district court's factual findings for clear error and its legal conclusions *de novo*." *United States v. Hudson*, 405 F.3d 425, 431 (6th Cir. 2005).

B. *The district court properly held that police officers could stop and investigate where they had reasonable suspicion of criminal activity*

Under *Terry v. Ohio*, a police officer may stop a vehicle if specific and articulable facts give him reasonable suspicion that an occupant is committing a crime. 392 U.S. 1, 20-21 (1968). The proof required to indicate "reasonable suspicion" is "obviously less demanding" than that needed for probable cause. *United States v. Sokolow*, 490 U.S. 1, 7 (1989). To assess the validity of a *Terry* stop, the court considers the totality of the circumstances. *United States v. Martin*, 289 F.3d 392, 396 (6th Cir. 2002).

We determine whether reasonable suspicion existed at the point of seizure—not, as appellant's counsel contended at oral argument, at the point of *attempted* seizure. "A person is seized by the police and thus entitled to challenge the government action under the Fourth Amendment when the officer, by means of physical force or show of authority, terminates or restrains his freedom of movement." *Brendlin v. California*, 127 S.Ct. 2400, 2405 (2007) (internal citations omitted); *see California v. Hodari D.*, 499 U.S. 621, 626 (1991) ("[The Fourth Amendment] does not remotely apply, however, to the prospect of a policeman yelling 'Stop, in the name of the law!' at a fleeing form that continues to flee. That is no seizure."); *United States v.*

---

[1] This assessment was based on appellant's prior convictions for (1) one count of Aggravated Robbery and one count of Felonious Assault which were committed on October 18, 1976; (2) one count of Aggravated Robbery which was committed on February 6, 1987; and (3) one count of Aggravated Robbery occurring on May 15, 1987. Appellant stipulated in writing that he was convicted in all three of these cases.

*Washington*, 12 F.3d 1128, 1132 (D.C. Cir. 1994).  "[T]here is no seizure without actual submission." *Brendlin,* 127 S.Ct. at 2405.  Here, appellant was not seized until he exited the house and complied with Officer Helthinstine's orders to hold his hands in the air.  Before that, he had not submitted to any show of authority.  True, he did not have an effective way to signal submission until the vehicle his wife was driving, and in which he was a passenger, stopped moving.  *See id.* at 2409 (noting that Brendlin, the passenger, "had no effective way to signal submission while the car was still moving on the roadway.").  But even once the vehicle had pulled into the garage, appellant exited it and ran inside the house despite Officer Helthinstine's orders; he clearly did not submit. *See id.* (noting that "once [the vehicle] came to a stop [Brendlin] could, and apparently did, submit by staying inside").  Accordingly, although Officer Helthinstine may have had reasonable suspicion when he activated his lights, we need only determine whether reasonable suspicion existed at the time appellant actually submitted—when he exited the house and complied with Officer Helthinstine's orders.

When Officer Helthinstine testified at the suppression hearing, he articulated several facts which led Officer Helthinstine to reasonably suspect that appellant was engaged in criminal activity at the time he was seized. The Government's brief lists the facts which led to Officer Helthinstine's reasonable suspicion conclusion:

> (1) shortly after the incident, the victim...relayed to a deputy sheriff that she had just been robbed at gunpoint and provided a description of her assailant, Thomas McCauley, whom she apparently knew, and the vehicle in which he was driving;
> (2) the deputy made a broadcast over the police radio of the black male suspect and his vehicle, described as a small black SUV;
> (3) shortly thereafter, the same deputy observed the car drive past him on Riverside Drive, consistent with the information provided by Laurie Mitchell, and relayed that to Officer Helthinstine;
> (4) Officer Helthinstine, who was stationary at an intersection on Riverside Drive, then observed a number of cars drive past him including a small black SUV, the only car matching the description given by Deputy Phillips;
> (5) Officer Helthinstine then fell in behind the SUV and activated his overhead lights;
> (6) the SUV did not stop, but rather pulled into a driveway and entered a garage of a residence on Riverside Drive...

Final Brief for Plaintiff-Appellee at 14-15, United States v. Thomas L. McCauley, No. 07-3935 (6th Cir. March 14, 2008).

Our court's precedent confirms that these uncontroverted facts give rise to something more than an "unparticularized suspicion" or a "hunch" that criminal activity was afoot. *See, e.g., Terry*, 392 U.S. at 27; *United States v. Cortez*, 449 U.S. 411, 417-18 (1981); *United States v. Hurst*, 228 F.3d 751, 757 (6th Cir.2000); *United States v. Molina*, 226 Fed. Appx. 523 (2007).  In *United States v. Cortez*, 449 U.S. 411, 417-18 (1981), the Court interpreted the *Terry* requirement that characteristics be "particularized" to mean that viewed in their entirety, the descriptive characteristics must "raise a suspicion that the particular individual being stopped is engaged in wrongdoing." *Cortez*, 449 U.S. at 418-419.  It is not necessary for the characteristics to be uncommon or especially unique in order to be particularized. *United States v. Molina*, 226 Fed. Appx. 523 (2007).[2]

------

[2]In our unpublished opinion in *United States v. Molina*, we held that a victim's description of the suspect's vehicle as a "small, black Nissan" was sufficient to create reasonable suspicion. 226 Fed. Appx. 523 (2007). In *Molina*, we held that a police officer had reasonable suspicion where one minute after he received a dispatch regarding a drive-by shooting in which assailant was driving a "small, black Nissan," the officer stopped a car matching that description four blocks from where the shooting had occurred.  In determining whether the victim's description was sufficiently

Additionally, the experience of the law enforcement officer must be taken into account in the reasonable suspicion analysis:

> The process does not deal with hard certainties, but with probabilities. Long before the law of probabilities was articulated as such, practical people formulated certain common sense conclusions about human behavior; jurors as factfinders are permitted to do the same-and so are law enforcement officers.... the evidence thus collected must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement.

*Cortez*, 449 U.S. at 418. In determining whether reasonable suspicion exists, we allow officers to make inferences from the information available to them that "might well elude an untrained person." *United States v. Arvizu*, 534 U.S. 266, 273 (2002)(quoting *Cortez*, 449 U.S. at 418).

From the perspective of Officer Helthinstine, reasonable suspicion certainly existed that McCauley was engaged in criminal activity. He relied on the specific, articulable facts relayed to him by Deputy Phillip. These facts, together with reasonable inferences drawn based on his experience as a police officer, led him to correctly conclude that an occupant of the vehicle was engaged in criminal activity. The suspect vehicle was found just minutes after the victim described the SUV's location and characteristics to Deputy Phillips. Officer Helthinstine observed a vehicle matching the description at a location consistent with the time needed to travel to that point and traveling in a direction consistent with Deputy Phillips' description of its path. Additionally, the failure of the vehicle to pull over once Officer Helthinstine activated his lights and the subsequent conduct of appellant provided additional reason for him to conclude that criminal activity was indeed underfoot.[3]

In *United States v. Hurst*, we found that reasonable suspicion existed where there were more occupants in the stopped car than were reported by the dispatcher. 228 F.3d 751, 757 (6th Cir.2000). In *Hurst*, the victim described the suspect's car as a "dark-colored Thunderbird" with a broken grill. *Id.* at 755. Police later stopped the suspect who was driving a dark blue Mercury Cougar and was twenty-five minutes in driving time from the victim's home. *Id.* Despite the discrepancies between the actual car stopped and the victim's description of the car, as well as the fact that the car held a different number of occupants than originally described, we held that reasonable suspicion existed. *Id.* at 757. Appellant distinguishes the present case by pointing out that the car stopped in *Hurst* had a broken grill. However, the accompanying facts in this case overcome this distinction. In making a reasonable suspicion determination, we must consider "*all* circumstances surrounding the actions of a suspected wrongdoer." *United States v. Garza*, 10 F.3d 1241 (1993). In this "totality of the

---

"particularized," we stated, "Black cars are certainly common, as are small ones and as are Nissans. However, all of these descriptors taken together and viewed in the totality of the circumstances with the location of the car being consistent with the location of the shooting create a particularized basis giving rise to reasonable suspicion." *Molina*, 226 Fed. Appx. at 528.

[3]The Government's brief lists the facts that created sufficient reasonable suspicion in Officer Helthinstine after the vehicle failed to stop:

> (7) as the SUV pulled in and the garage door was closing, Officer Helthinstine observed a black male exit the front passenger seat of the vehicle and curse and yell at the top of his lungs;
> (8) Officer Helthinstine exited his vehicle and ordered the subject to stop and place his hands in the air;
> (9) the suspect failed to comply and ran into the residence through a door in the garage as the exterior door of the garage closed;
> (10) seconds later, the exterior garage door opened and Officer Helthinstine observed a black female exit from the driver's seat of the SUV; and
> (11) seconds later, Officer Helthinstine observed the suspect exit from the door inside the garage and once again, observed the suspect cursing and yelling.

circumstances" analysis, no one fact is dispositive. In this case there are certainly "specific and articulable" facts which, in addition to the car's description, are sufficient to form a reasonable suspicion in Officer Helthinstine.

The district court properly held that Officer Helthinstine could stop and investigate appellant where he had reasonable suspicion of criminal activity. Considering the totality of the circumstances, we hold that reasonable suspicion existed such that stopping appellant was constitutionally permissible.

C. *The district court did not err in finding that the Government met its burden in showing that valid consent was obtained*

While the Fourth Amendment protects citizens from unreasonable searches and seizures, a search is not unreasonable if an individual with a privacy interest in the item to be searched gives voluntary consent. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973). Valid consent may be provided not only by the defendant but also by "a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected." *United States v. Matlock*, 415 U.S. 164, 171 (1974).

The government bears the burden of proving that the consent was voluntary by "clear and positive testimony." *United States v. Erwin*, 155 F.3d 818, 823 (6th Cir.1998). Voluntariness is determined by examining the totality of the circumstances. *Schneckloth*, 412 U.S. at 227. Relevant factors in determining voluntariness, none of which are dispositive, include the repeated and prolonged nature of questioning, the use of physical punishment such as the deprivation of food or sleep, and the length of detention. *Schneckloth,* 412 U.S. at 226 (citations omitted). While knowledge of the right to refuse may be considered as a factor, it is not a necessary finding. *Id.* at 227. A subjective belief of coercion is not sufficient to destroy voluntariness. *United States v. Crowder*, 62 F.3d 782 (6th Cir. 1995).

Despite the district court's finding that consent to search the house was voluntarily given by his wife, appellant argues that valid consent was not obtained. Appellant attempts to attack the credibility of various testifying police officers by finding inconsistencies between their testimonies. He disputes the credibility of the testimony of Deputy Snyder and Officer Helthinstine based on the fact that both testified that they could not remember the exact words that [Denise McCauley] spoke in consenting. A closer look at the officers' testimony reveals their consistency. Deputy Snyder recalled that when asked if anyone else was inside the residence, Denise McCauley replied "go ahead and search" or "take a look." Officer Helthinstine testified that her response was "you can go ahead and check" or "help yourself." This consistent testimony certainly does not defeat the officers' credibility. Additionally, several officers testified that Denise McCauley was "cooperative" when they were asked about her demeanor. This clear and positive testimony, absent any evidence of coercion, establishes that appellant's wife in fact consented to the search of their house.

Additionally, the district court correctly determined that Denise McCauley gave consent to search the car. Appellant presents no evidence to dispute Officer Heiser's testimony that Denise McCauley consented to a search of the car. Despite Officer Snyder's failure to recall speaking any further with Denise McCauley after exiting the house, Officer Heiser testified in detail about her statements expressing free and voluntary consent. Further, Detective Ritchey testified that later that same day, Denise McCauley confirmed that she had provided consent to search both the house and vehicle. Appellant does not argue that any coercion was used in obtaining this admission of consent.

In reviewing the denial of a motion to suppress, "we accord considerable deference to the credibility findings of the trial court." *U.S. v. Cooke*, 915 F.2d 250, 252 (6th Cir. 1990). To attack a district court's suppression hearing credibility determination, a defendant must establish that the

district court's conclusion was clearly erroneous. *Id.* The district court's determination that the consent was knowing and voluntary is a factual determination that is not clearly erroneous and is supported by the evidence. The "clear and positive" testimony in this case establishes that Denise McCauley did consent to the search of the house and vehicle. Through the testimony of Deputy Snyder and Officer Helthinstine, the government satisfied its burden of showing that appellant voluntarily consented to the search. There is no basis in the record to conclude that the district court clearly erred in finding that appellant voluntarily consented to the search.

## II. The district court properly ruled that appellant's prior convictions met the requirements of the Armed Career Criminal Act.

This court reviews questions of law de novo, *Weimer v. Kurz-Kasch, Inc.*, 773 F.2d 669, 671 (6th Cir.1985), and questions of fact under the clearly erroneous standard. *Loudermill v. Cleveland Bd. of Education*, 844 F.2d 304, 308 (6th Cir. 1988), cert. denied, 488 U.S. 941. On this issue, the key facts are not in dispute. J.A. at 34. The issue of whether a defendant's prior conduct constitutes two predicate offenses or a "single occasion" pursuant to the ACCA is a legal issue subject to de novo review. *United States v. Graves*, 60 F.3d 1183, 1185. (6th Cir. 1995).

The Armed Career Criminal Act imposes a mandatory minimum sentence of fifteen years on career criminals. The statute provides:

In the case of a person who violates section 922(g) of this title and has three previous convictions ... for a violent felony or a serious drug offense, or both, committed on occasions different from one another, such person shall be...imprisoned not less than fifteen years....

18 U.S.C. § 924(e)(1). The statute defines career criminals as those people who have committed three predicate violent felonies "on occasions different from one another." This circuit has further clarified that under the ACCA, a career criminal is one who has been convicted of three criminal "episodes." *United States v. Graves*, 60 F.3d 1183, 1185 (6th Cir. 1995)(quoting *United States v. Hughes*, 924 F.2d 1354, 1361 (6th Cir.1991)). "An episode is an incident that is part of a series, but forms a separate unit within the whole. Although related to the entire course of events, an episode is a punctuated occurrence with a limited duration." *Id.*

Appellant's prior convictions include (1) one count of Aggravated Robbery and one count of Felonious Assault which were committed on October 18, 1976; (2) one count of Aggravated Robbery which was committed on February 6, 1987; and (3) one count of Aggravated Robbery which was committed on May 15, 1987. We need not consider whether the 1976 convictions constitute one or two predicate offenses under the ACCA. Treating either felony in the 1976 conviction as one predicate offense and combining it with the two 1987 qualifying offenses would require sentencing under the ACCA. As such, we focus on appellant's arguments involving the 1987 offenses.

Appellant was convicted of two counts of aggravated robbery at a hearing that took place on November 16, 1987. At that hearing, he was convicted of the offenses which had occurred on February 6, 1987 and May 16, 1987. Appellant argues that, under the ACCA, his two 1987 convictions were not "committed on occasions different from one another" because they were consolidated for sentencing purposes.

The clear language of the ACCA reveals that appellant's prior convictions in fact satisfy its requirements. The word "committed" in § 924(e) indicates that the criminal acts must have occurred on separate occasions, not that their resulting convictions must take place on separate dates. That the two 1987 offenses occurred on different dates is not in dispute. Appellant expressly stipulated

that he was convicted of both aggravated robbery and felonious assault in 1976 and two counts of aggravated robbery in 1987 occurring on May 15, 1987 and February 6, 1987.

Beyond the statute's clear language, this court has held that the fact that a defendant was convicted for two offenses during the same judicial proceeding does not prevent those offenses from constituting "occasions different" under the ACCA. In *United States v. Brady*, we stated that the ACCA "imposes no conditions as to the timing of the convictions," and explicitly held that the ACCA "requires only three qualifying prior convictions without regard to the order in which those convictions were obtained." 988 F.2d 664, 667-668, 670 (6th Cir. 1993). In *Brady*, we held that two armed robberies committed thirty minutes apart and with the same weapon were "occasions different" within the meaning of the ACCA. *Id.* at 665. The court reasoned that because the crimes were committed against "different victims at different places and at distinctly different times" the two robberies correctly counted as separate predicate offenses, and he was sentenced under the ACCA. *Id.*

In *United States v. Roach*, a defendant was convicted of two drug offenses which had been committed 15 days apart in a single proceeding. 958 F.2d 679, 683 (6th Cir. 1992). Both offenses involved the sale of controlled substances to the same undercover agent. *Id.* These convictions were held to constitute "occasions different" under the ACCA. In light of *Brady* and *Roach*, appellant cannot argue that two distinct offenses committed over three months apart constitute a single offense solely because he was convicted of both offenses in a single proceeding.

Our precedent on this issue is clear, as is the language of the ACCA. Appellant's two 1987 convictions were properly treated as separate qualifying convictions under the ACCA. Accordingly, we hold that the district court correctly ruled that appellant should be sentenced under the ACCA.

## CONCLUSION

The district court did not err in finding that reasonable suspicion existed such that appellant's Fourth Amendment rights were not violated. Additionally, they correctly held that his residence and vehicle were searched pursuant to the valid consent of his wife, rendering the search constitutional. Based on clearly established precedent and the language of the ACCA, his prior offenses clearly subject him to sentencing under the ACCA. For the foregoing reasons, we AFFIRM the ruling of the district court.