**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 10a0028n.06

No. 08-6512

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

**Jan 19, 2010**

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF TENNESSEE |
| Frank Phillips, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

BEFORE:  SILER, ROGERS, and MCKEAGUE, Circuit Judges.

ROGERS, Circuit Judge.  Frank Phillips, sentenced to 180 months' imprisonment following his guilty plea to being a felon in possession of a firearm, appeals the district court's denial of his motion to suppress evidence discovered by police after a warrantless entry into his hotel room.  The only issue presented by this appeal is whether Phillips voluntarily gave consent for police to enter his hotel room.  Detective Castillo, leader of the police team that visited Phillips' hotel room for a "knock and announce," testified at the suppression hearing that Castillo asked for and received permission to enter Phillips' hotel room; Phillips testified that the police entered his hotel room without asking for permission.  The district court determined that Detective Castillo's testimony was more credible and denied the motion to suppress.  Because nothing in the record compels the conclusion that the district court's credibility finding was clearly erroneous, Phillips' conviction must be upheld.

Frank Phillips was arrested in the hotel room where he lived on August 11, 2007, after police found a small amount of crack cocaine, a crack pipe, and a gun next to his bed. Phillips' attorney filed a motion to suppress the evidence discovered in the hotel room, arguing that Phillips never consented to the officers' entering his room. Three witnesses who were present at the hotel room testified at the suppression hearing: Phillips; Detective Castillo, the officer in charge of the investigation; and Detective McMinn, a member of the investigative team. The district court held that the evidence was admissible, and Phillips subsequently pleaded guilty to being a felon in possession of a firearm and was sentenced to 180 months' imprisonment. As part of the guilty plea, Phillips reserved the right to appeal the denial of his motion to suppress.

At the suppression hearing, Detective Castillo testified that he organized a four-person investigative team in response to a report from a fellow officer stating that an individual had reported that somebody was selling crack cocaine in room 222 of the King's Court Motel. The arrest ticket, written by Detective McMinn, also stated that the individual was armed, but Detective Castillo testified that he had no knowledge of any firearm. Detective Castillo and other members of the team were dressed in black "takedown gear" with the word "police" written across the chest. Upon arriving at the King's Court Motel, the officers proceeded directly to room 222, where Phillips was living. The parties dispute what happened next.

Detective Castillo testified that when the team arrived at Phillips' room, Castillo knocked on the door to conduct what is known as a "knock and talk." Castillo stated that the "main purpose of a knock and talk would be to let the person at that residence know that there has been a complaint,

and with their permission, if they would let us come in, we can take care of the complaint." According to Castillo, Phillips answered the door, and Castillo told Phillips about the investigation and the information that led to the investigation. Castillo then stated that he asked Phillips "if he minded if we stepped in." Phillips said "no, come on in." As soon as Castillo entered the room he could see an object on the nightstand that he recognized immediately as a crack pipe based on his experience with the police department. While Castillo spoke with Phillips, Detective McMinn secured the crack pipe and located additional evidence. Castillo read Phillips his Miranda rights and placed him under arrest. Castillo also testified that sometime prior to the arrest, Phillips stated, without provocation, that he did not sell drugs, he just used them.

Phillips disputed much of Castillo's testimony about the officers' conduct. Phillips stated that he was on the phone in his room when he heard a knock at the door. When he did not answer immediately, he heard a second round of knocking and voices threatening to kick in the door if he did not answer. According to Phillips, when Phillips opened the door, Castillo stated, "Where is the pistol at? Because we don't want to get harmed." Castillo then began to conduct a pat-down search on Phillips while Castillo was standing outside the hotel room and Phillips was standing just inside the door. Phillips testified that, after the pat-down search, the officers came into the room without asking permission and Phillips backed up toward the window. While Castillo spoke with Phillips, the other members of the investigative team conducted a search of his hotel room. Upon finding $60 in a nightstand drawer, one of the police officers asked Phillips if that was all the money he made. Phillips responded that he did not sell crack. As Castillo continued to ask Phillips about the pistol,

Detective McMinn located the crack and the firearm in a drawer by the nightstand. Phillips also testified that no officer ever shined a flashlight inside the room while standing at the door. On-cross examination, Phillips admitted that he had been smoking crack before the police arrived and that he could not remember where the crack pipe was when the officers located it.

Detective McMinn corroborated much of Castillo's version of events, but McMinn was not able to confirm or deny that Castillo asked for consent to enter the hotel room. McMinn testified that he had prepared the arrest ticket for Phillips and that the ticket stated that an armed individual was selling drugs at the King's Court Motel. When the team arrived at room 222, McMinn testified that he was standing about four or five feet away from Castillo when Castillo knocked on the door. Phillips answered, and McMinn testified that before entering the room, Castillo introduced himself as Detective Castillo of the Organized Crime Unit and asked if the officers could talk to Phillips. McMinn testified that Phillips "stepped back and allowed us to come into the room," but when asked if Castillo actually requested consent to enter the hotel room, McMinn stated, "I don't recall exactly what Castillo said to Mr. Phillips." On cross-examination, McMinn stated, "I don't recall the words that Castillo spoke at the door. I was off to the side. Instead of standing around in front of the door, I was off to the side in front of the room next door to it." Phillips' counsel then asked, "You didn't hear Mr. Phillips say, y'all come on in, did you?" McMinn responded, "No."

McMinn described the interior of the hotel room as dimly lit and stated that there was a light on in the area of the restroom that was part of the main living area. Once the officers were inside the room, McMinn scanned the room using his flashlight to see if anybody else was inside the room.

When he scanned the bed area, he noticed a crack pipe, along with three white rocks. After seeing the crack pipe, McMinn left the entrance area, walked to the bed, and shined his flashlight on the pipe and what appeared to be rocks of crack cocaine. As he did this, the light from the flashlight illuminated a drawer on the nightstand, and McMinn noticed what he identified immediately as the grip of a handgun.

Following the testimony of Castillo, Phillips, McMinn, and a fourth witness not relevant for purposes of this appeal, the district court determined that because McMinn was unable to testify as to the details of the conversation between Castillo and Phillips, the motion turned on a credibility determination between Castillo and Phillips. After a thorough discussion of the different versions of events given by the parties, the district court determined that Phillips' version of events simply was not credible. The court reasoned that Phillips' clear recollection of certain events was inconsistent with his inability to recall some of the salient points of what occurred that evening, such as where the crack and the crack pipe were located. The court also noted that Phillips had a checkered criminal history and had admitted to smoking crack cocaine shortly before the officers arrived. The court credited Castillo's testimony that Phillips voluntarily granted permission for the officers to enter the hotel room. The court held that because the officers were entitled to scan the room visually for safety, the evidence was discovered in plain view. The district court denied the motion to suppress, and Phillips pleaded guilty to being a felon in possession of a firearm. Phillips filed this timely appeal.

Because nothing in the record compels the conclusion that the district court's credibility determination was clearly erroneous, we uphold the district court's decision to deny Phillips' motion to suppress the evidence discovered during the search of the hotel room. Phillips argues that because he never gave Castillo and his team consent to enter the hotel room where Phillips had been living, entry into his hotel room by the police and the subsequent discovery of the evidence against him violated the Fourth Amendment. The Fourth Amendment "generally prohibits the warrantless entry of law enforcement personnel into a person's home." *United States v. Ivy*, 165 F.3d 397, 401 (6th Cir. 1998). However, the prohibition does not apply where consent to enter has been obtained voluntarily. *Id.* In cases of warrantless entry or searches, "[t]he burden of proving that a search was voluntary is on the government, and must be proved by clear and positive testimony." *United States v. Moon*, 513 F.3d 527, 537 (6th Cir. 2008).

Here, Castillo's clear and positive testimony establishes that the police received voluntary consent to enter the hotel room. Castillo testified that the investigative team wore clothing that clearly identified them as police, that Castillo knocked on Phillips' door and informed Phillips of the information leading to the investigation, and that Castillo asked for permission to enter the hotel room, which Phillips verbally granted. When the officers entered the room, both Castillo and McMinn immediately recognized a crack pipe inside the room while scanning the area for other individuals. In moving to seize the crack pipe, McMinn discovered three rocks of crack cocaine and the handgun. Although Phillips disputed this version of events at the suppression hearing, the district court carefully weighed the evidence and made a determination that Castillo's testimony was

more credible. "To attack a district court's suppression hearing credibility determination, a defendant must establish that the district court's conclusion was clearly erroneous." *United States v. McCauley*, 548 F.3d 440, 447 (6th Cir. 2008). A district court's credibility finding carries considerable weight, and "[f]indings of fact anchored in credibility assessment are generally not subject to reversal upon appellate review." *Ivy*, 165 F.3d at 401 (internal quotations omitted). Because nothing in the record compels the conclusion that the district court's decision to credit Castillo's version of events was clearly erroneous, affirmance of the district court's decision to deny the motion to suppress the evidence discovered in Phillips' hotel room is required.

Phillips argues that the district court's credibility determination was clearly erroneous (1) because the court determined incorrectly that Detective McMinn testified that he did not hear whether Castillo asked for permission to enter the hotel room when McMinn actually testified that he could not recall what Castillo said to Phillips; (2) because McMinn's testimony failed to corroborate Castillo's version of events; and (3) because Phillips, who was familiar with the criminal justice system through his many past arrests, would never have consented to police entry into a hotel room with drugs and a weapon inside. These arguments fail, however, because the fact that Phillips acted against his own self-interest is not sufficient to require a court to conclude that he did not consent to entry, and because McMinn's testimony is much more consistent with Castillo's testimony than with Phillips' version of events. Phillips argues that because McMinn never explicitly told the court that he could not hear what Castillo said to Phillips and because it would be unreasonable for someone standing only four or five feet away from two people engaging in a

conversation to be unable to hear what was said between them, the district court's conclusion was clearly erroneous. McMinn's testimony, however, was that he did not recall exactly what was said because he was standing off to the side near the room next door. On cross-examination, when asked whether he heard Castillo ask for permission to enter, McMinn said no. McMinn's testimony establishes only that, at a suppression hearing months after an arrest, McMinn could not recall the exact details of a conversation between a Detective four or five feet away and a suspect inside a hotel room. The only inconsistency between McMinn's and Castillo's versions of events was whether the police knew before entering the room that the suspect was likely to be armed. However, this difference had little to do with whether consent was voluntarily given. Moreover, McMinn's testimony is not at all consistent with Phillips' version of events, which is that the police banged on the door, threatened to break it down when Phillips did not answer at first, began physically searching Phillips and asking where his gun was, and entered before Phillips stepped back or gave verbal consent to entry. McMinn's testimony does not help Phillips.

AFFIRMED.