DISSENT
RALPH B. GUY, JR., Circuit Judge,
dissenting.
I would affirm the district court’s denial of the defendant’s suppression motion, *697 which argued that the evidence seized was the “fruit” of an unconstitutional Terry stop. I depart from the majority on the questions of precisely when the defendant was seized, and whether there was reasonable suspicion at the point of seizure sufficient to justify a brief investigatory detention consistent with Terry and its progeny.
As the majority emphasizes, the defendant was within his rights to ignore the officers’ inquiry, and a “refusal to cooperate, without more, does not furnish the minimal level of objective justification needed for a detention or seizure.” Florida v. Bostick, 501 U.S. 429, 437, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991). However, even when the officers have no basis for suspecting a particular individual, they “do not violate the Fourth Amendment’s prohibition of unreasonable seizures merely by approaching individuals on the street or in other public places and putting questions to them if they are willing to listen.” United States v. Drayton, 536 U.S. 194, 200, 122 S.Ct. 2105, 153 L.Ed.2d 242 (2002). After the officers first called out to defendant to “hold up,” he continued walking, crossed in front of the waiting car, opened the door of the passenger side, and threw the bag he had been carrying into the vehicle. The officers, continuing to approach, called in a loud voice that they wanted to talk to him and demanded that he stop and put his hands up. The defendant, although now facing the officers, did not comply and instead braced himself “in the door frame and on the top of the door.” The majority concludes that this is the point at which the defendant was seized for Fourth Amendment purposes.
While I agree that a reasonable person in defendant’s situation would not have felt free to leave once the officers demanded that he stop and put his hands up, that, of course, is “a necessary, but not a sufficient condition for seizure' — or, more precisely, for a seizure effected through a ‘show of authority.’ ” California v. Hodari D., 499 U.S. 621, 628, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991). A seizure “requires either physical force ... or, where that is absent, submission to the assertion of authority.” Id. at 626, 111 S.Ct. 1547. “[Tjhere is no seizure without actual submission; otherwise, there is at most an attempted seizure, so far as the Fourth Amendment is concerned.” Brendlin v. California, 551 U.S. 249, 254, 127 S.Ct. 2400, 168 L.Ed.2d 132 (2007). In this case, the defendant had stopped walking away; but he did not simply “stand still.” The evidence, viewed — as it must be — in the light most favorable to the government, indicated indecision on the defendant’s part about whether to flee or to submit to the officers’ show of authority as the officers closed the distance and were yelling for defendant to stop and put his hands up. The officers testified that as they approached, the defendant acted like he was thinking about whether to jump into the car or take off running. While defendant did not do either, he also did not submit to the officers’ show of authority.
The transcript, as well as the district court’s factual findings, reflect that the defendant also made suspicious movements as he stood in the frame of the open car door. Specifically, although the exact sequence was not clear, the uncontradicted evidence was that the officers saw the defendant bending forward and reaching for his middle region — where the loaded firearm was found — as they closed in and before he complied with their demands that he put his hands up. I agree that the proper focus is not whether the defendant complied with the officers’ successive demands, but at what point he actually submitted to the officers’ show of authority. In this case, I conclude that the defendant did not unambiguously submit to the officers’ show of authority until he raised his *698 hands and turned to come away from the open car door. See United States v. McCauley, 548 F.3d 440, 442 (6th Cir. 2008), cert. denied, — U.S. -, 129 S.Ct. 1601, 173 L.Ed.2d 690 (2009) (holding seizure effectuated when passenger who jumped out of stopped vehicle submitted to the officer’s show of authority by raising his hands). It is at this point of submission that we must determine whether there was reasonable suspicion. Id. at 443.
Reasonable suspicion “ ‘requires more than a mere hunch, but is satisfied by a likelihood of criminal activity less than probable cause, and falls considerably short of satisfying a preponderance of the evidence standard.’ ” Dorsey v. Barber, 517 F.3d 389, 395 (6th Cir.2008) (citation omitted). As the district court found, the 911 call alone did not provide reasonable articulable suspicion that criminal activity was afoot. Illinois v. Wardlow, 528 U.S. 119, 123, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000). Reasonable suspicion, however, is determined from the totality of the circumstances and “allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that ‘might well elude an untrained person.’ ” United States v. Arvizu, 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002) (citation omitted). “The court’s evaluation and rejection of ... factors in isolation from each other does not take into account the ‘totality of the circumstances.’ ” Id. at 274, 122 S.Ct. 744.
Contextual considerations — time, place, and citizen complaint — “may not, without more, give rise to reasonable suspicion ... [but] they are relevant to the reasonable suspicion calculus.” United States v. Caruthers, 458 F.3d 459, 467 (6th Cir.2006). The caller’s apartment was known to the officers to be in a high drug trafficking area. The officers were responding at 4:00 a.m., to a repeat call from a known caller reporting that “some people” were “back,” referring to the earlier calls, and that they were walking around outside her home. She also said the “people” had arrived in a blue Cadillac. The officers responded in separate police cruisers within two or three minutes of the 911 call and saw a blue Cadillac with a flat tire across the street from the caller’s apartment. Sergeant Lamb testified that the caller’s apartment had one side toward Buda and another toward Whitson, with a grassy area separating the apartment from Buda. The defendant was quickly observed 20 to 30 yards away, “leaving a grassy area next to the apartment [from which they knew the 911 call had come] and stepping onto [Buda] Street where a vehicle was stopped.” Under the circumstances, it was not only permissible but also reasonable for the officers to attempt to speak to the defendant.
Unlike the majority, I would not dismiss from consideration the defendant’s actions between the time he threw the bag into the waiting car and when he unambiguously submitted to the officers’ show of authority. Defendant exhibited what the officers interpreted as momentary indecision about whether to flee, but he did not get into the car or attempt to ran away. Rather, as the officers closed in, yelling for defendant to stop and put his hands up, the officers drew their weapons and the defendant bent forward and reached his hands toward his “middle region.” Although defendant’s behavior — bending and reaching for his front — was susceptible of innocent explanation, it also could reasonably be viewed as an attempt to conceal a weapon or other contraband from the officers. Arvizu, 534 U.S. at 277, 122 S.Ct. 744 (“A determination that reasonable suspicion exists, however, need not rule out the possibility of innocent conduct.”). *699 When the factors are taken together, I conclude that the totality of the circumstances at the time the seizure occurred— including the time, the place, the 911 call, defendant’s proximity to the apartment, the inference that defendant was about to leave the area, the indication that defendant might flee once he saw the police, and the defendant’s movements suggesting concealment — give rise to a reasonable particularized suspicion sufficient to justify the brief detention that followed. Finding no “taint” from the initial stop, I respectfully dissent.