**NOT RECOMMENDED FOR PUBLICATION**
File Name: 15a0637n.06

No. 14-2430

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Sep 14, 2015
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| WALTER LOUIS BRIDGES, JR., | ) | DISTRICT OF MICHIGAN |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

BEFORE: SUHRHEINRICH and GRIFFIN, Circuit Judges; and STAFFORD, District Judge.[*]

GRIFFIN, Circuit Judge.

Defendant Walter Louis Bridges, Jr. appeals his convictions for being a felon in possession of a firearm and ammunition, 18 U.S.C. § 922(g)(1), possessing a stolen firearm, 18 U.S.C. § 922(j), possessing with intent to distribute a controlled substance, 21 U.S.C. § 841(a)(1), and possessing a firearm in furtherance of a drug trafficking crime, 18 U.S.C. § 924(c)(1)(A). Before trial, defendant moved to suppress evidence seized from him during a *Terry*[1] stop as the fruits of an unlawful search. On appeal, defendant challenges the district court's ruling denying the motion, arguing the police lacked reasonable suspicion to conduct the investigatory stop. We disagree and affirm.

---

[*]The Honorable William H. Stafford, Jr., Senior United States District Judge for the Northern District of Florida, sitting by designation.

[1]*Terry v. Ohio*, 392 U.S. 1 (1968).

I.

On a December evening in 2013, Corporal Jeffrey Neese of the Wayne County Sheriff's Department was on routine patrol with a partner in the City of Detroit. About 5:30 p.m., the officers passed through a "known crime area" on Charlotte Street in their fully marked police cruiser. Officer Neese, a fourteen-year veteran of the department, described the neighborhood as a "high narcotics area" where "[a]ll types of crime" occurred, including "misdemeanors, traffic infractions [and] firearm-related offenses." Approaching a stop sign at the intersection of Charlotte and Second Avenue, Neese noticed a car parked less than one-half block down on Charlotte. He could see the silhouette of a person sitting upright on the driver's side of the car, and "presumably the person in the [car could] see [the police cruiser]." Neese proceeded slowly through the intersection, but when he looked at the car again, the silhouette was gone. Pulling closer to the car, Neese saw defendant "leaning back and hunched to the right" of the driver's seat. It appeared to Neese that defendant had noticed the police cruiser and "leaned over" to "hide and not be detected."

Believing there may be "a motor vehicle theft in progress," Neese pulled over near the front of the parked car, blocking defendant's ability to drive away, and pointed his spotlight on the vehicle. He exited the police cruiser and ordered defendant to show his hands. Defendant complied, but grew irate when Neese asked him to come out of the car. Eventually, defendant got out of the car and "immediately swung" at Neese with "a closed fist." Neese and his partner tackled defendant and a loaded magazine fell from defendant's person. After the officers secured defendant, Neese performed a pat-down search and recovered a second loaded magazine, along with two loaded "speed loaders." From inside defendant's car, Officer Neese recovered two handguns and a pill bottle containing seventeen rocks of cocaine, all in plain view.

The district court denied defendant's motion to suppress the seized evidence, identifying several "contextual considerations" in support of its finding of reasonable suspicion. First, defendant was "sitting in a parked car in this high-crime area while it was dark outside during a cold winter evening." Second, defendant reacted to the police cruiser evasively, by slouching down in his seat. Third, upon taking a closer look at defendant's vehicle, Neese confirmed that defendant "appeared to be trying to hide from view of the patrol car," and was not slouching for any other discernible reason. The district court found that these circumstances, coupled with Neese's "training and experience," created reasonable suspicion that defendant may be stealing the car. Accordingly, the court ruled Neese had a "sufficient basis for temporarily detaining [d]efendant to determine whether or not he was actually engaged in wrongdoing."

A jury subsequently convicted defendant on all counts. The district court sentenced him to a total of 116 months' imprisonment. Defendant timely appealed.

II.

"The grant or denial of a motion to suppress is a mixed question of fact and law. On appeal, we review the district court's findings of fact for clear error and its conclusions of law de novo." *United States v. Ellis*, 497 F.3d 606, 611 (6th Cir. 2007) (citation omitted). A factual finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with a firm and definite conviction that a mistake has been made. *Id.* We consider the evidence in a light most favorable to the district court's decision. *Id.* "With regard to *Terry*-stop analysis in particular, although the standard of review on the ultimate reasonable suspicion inquiry is *de novo*, the district court is at an institutional advantage, having observed the testimony of the witnesses and understanding local conditions, in making this determination. Accordingly, 'due weight' should be given to the inferences drawn from the facts by 'resident

judges.'" *United States v. Caruthers*, 458 F.3d 459, 464 (6th Cir. 2006) (quoting *United States v. Foster*, 376 F.3d 577, 583 (6th Cir. 2004)).

A.

Defendant first contends that the district court clearly erred in finding that: (1) the area in which the stop occurred was a "high crime area"; and (2) Neese relied on his training and experience in assessing defendant's conduct. Defendant is incorrect in both respects.

Neese testified the intersection of Charlotte and Second was a "high narcotics area," where "[a]ll types of crime" occurred, and where Neese had made prior arrests. He agreed with the prosecutor's characterization of the intersection as a "known crime area." Although defendant urges there is a "distinction between an area where crime is known to occur and a high crime area," this is a distinction based on semantics, not substance. *See Illinois v. Wardlow*, 528 U.S. 119, 124 (2000) (alternately referring to the area of the defendant's arrest as "an area known for heavy narcotics trafficking," "an area of expected criminal activity," and a "high crime area"). Neese's testimony that the area was "known" for a "high" level of criminal activity was sufficient to support the district court's finding that the location of arrest was a high crime area.

Evidence also supports the district court's finding regarding Neese's training and experience. Neese testified that he had fourteen years' experience in law enforcement and was familiar with the criminal activity in the area. The district court could no doubt infer that Neese brought his years of training and experience to bear in deciding to stop defendant for further investigation.

B.

Next, defendant argues that his seizure was not supported by reasonable suspicion. We disagree.

"The Fourth Amendment prohibits 'unreasonable searches and seizures' by the Government, and its protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest." *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (quoting *Terry v. Ohio*, 392 U.S. 1, 9 (1968)). An officer may conduct an investigatory stop if he has a reasonable suspicion that a person has been, or is about to engage in, criminal activity. *United States v. Place*, 462 U.S. 696, 702 (1983); *Terry*, 392 U.S. at 21–22. "Reasonable suspicion exists where the officer can articulate specific, particularized facts that amount to more than a 'hunch' that criminal activity may be afoot." *United States v. Jeter*, 721 F.3d 746, 751 (6th Cir. 2013). In evaluating whether the officer had reasonable suspicion, this court examines the totality of the facts and circumstances of which the officer was aware, including the contextual factor of the area's crime level. *United States v. Davis,* 514 F.3d 596, 608 (6th Cir. 2008). "Additionally, the experience of the law enforcement officer must be taken into account in the reasonable suspicion analysis[.]" *United States v. McCauley,* 548 F.3d 440, 445 (6th Cir. 2008).

Reasonable suspicion is judged from the moment of seizure, and here Neese seized defendant when Neese pulled up to the front of his car, preventing defendant from driving away. *See United States v. Gross*, 662 F.3d 393, 398–99 (6th Cir. 2011). Defendant argues Neese lacked reasonable suspicion at the time of the stop because Officer Neese was acting on the high crime character of the intersection and motivated by a "hunch."

To be sure, "[a]n individual's presence in an area of expected criminal activity, standing alone, is not enough to support a reasonable, particularized suspicion that the person is

committing a crime." *Wardlow*, 528 U.S. at 124. *See, e.g.*, *United States v. Johnson*, 620 F.3d 685, 692–96 (6th Cir. 2010) (reasonable suspicion lacking despite the defendant's presence in a high crime area around 4:00 a.m., where the officer received a 9-1-1 call alleging no criminal activity, the defendant was walking near a vehicle mentioned in the call, he did not stop when called by the police, and threw a duffle bag into a different car); *United States v. See*, 574 F.3d 309, 314–15 (6th Cir. 2009) (suppressing evidence where a group of men were parked in a car in a dimly lit, high crime area at 4:30 a.m., the car did not have a front license plate, the officer did not witness any criminal activity, and suspects did not "do anything suspicious" or try to flee the scene upon seeing the officer). Yet "officers are not required to ignore the relevant characteristics of a location" in assessing reasonable suspicion. *Wardlow*, 528 U.S. at 124. And "the fact that the stop occur[s] in a 'high crime area' [is] among the relevant contextual considerations in a *Terry* analysis." *Id.*

The present case involves more than an officer's hunch in a bad neighborhood. Specifically, defendant's "[f]urtive movements made in response to a police presence" heavily contributed to Neese's suspicions. *Caruthers*, 458 F.3d at 466. After noticing defendant's silhouette, Officer Neese pulled forward into the intersection and saw defendant slouch down as the police cruiser drew closer to his vehicle. While Neese did not testify to seeing defendant look at the police cruiser, it was reasonable for Neese to infer as much; the cruiser was fully marked and traveling at five to ten miles per hour. Defendant responds that he offered an "innocuous basis for his slumped posture," testifying he had been checking his cellular phone. But an "innocuous" explanation does not negate an officer's suspicions. "*Terry* accepts the risk that officers may stop innocent people." *Wardlow*, 528 U.S. at 126. For that reason, "the question is not whether there is a possible innocent explanation for each of the factors, but

whether all of them taken together give rise to a reasonable suspicion that criminal activity may be afoot." *United States v. Jacob*, 377 F.3d 573, 577 (6th Cir. 2004) (citing *Arvizu*, 534 U.S. at 274–75). Moreover, the district court did not accept defendant's explanation. The district court instead credited Neese's testimony that when he pulled closer to defendant's car, it "appeared" to him that defendant leaned over to avoid detection, not for some other purpose such as looking at his cellular phone. Defendant does not challenge this finding. Ducking out of an officer's view, in conjunction with other factors, can supply reasonable suspicion of illegal activity. *See Caruthers*, 458 F.3d at 465–68 (finding reasonable suspicion where the defendant matched a general description in an anonymous call, was in a high crime area, hurried away from police, and "hunched down" by a wall as if to conceal contraband or a weapon); *see also United States v. Finley*, 239 F. App'x 248, 252 (6th Cir. 2007) (stop justified where car occupants in high crime area slumped down after seeing officers pass, and then exited the car when the officers turned around to re-approach them).

At the time of the stop in this case, Neese (1) witnessed defendant engage in an evasive behavior, (2) for which Neese perceived no innocent explanation, (3) in a high crime area, and (4) on a cold winter evening. The district court also noted that it was getting dark outside, but this contextual factor carries less weight because it was only 5:30 p.m., a time at which many people are in their cars arriving home from work. Still, Neese's training and experience led him to believe defendant was slouching to avoid police detection and may have been attempting to steal the car. The district court was entitled to credit that belief. *See Arvizu*, 534 U.S. at 273 (officers may "draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person'") (quoting *United States v. Cortez*, 449 U.S. 411, 418 (1981)). Further, "in

close cases such as this, we have consistently stressed that we must 'review the evidence in a light most likely to support the district court's decision.'" *United States v. Winters*, 782 F.3d 289, 301 (6th Cir. 2015) (quoting *United States v. Braggs*, 23 F.3d 1047, 1049 (6th Cir. 1994)). In so doing, we agree that Neese could reasonably infer possible criminal activity and thus had reasonable suspicion to conduct a *Terry* stop.

Defendant relies on our decision in *Gross*, but *Gross* does not compel a contrary conclusion. In that case, the defendant was sitting in a parked car in a high crime area at an early morning hour when an officer parked behind the defendant and turned on his headlights. 662 F.3d at 396. Reacting to the lights, the defendant "abruptly" sat up, and then "slump[ed] down further in his seat." *Id.* at 396–97. However, the *Terry* stop in *Gross* began at the moment the officer parked behind the defendant and blocked him from leaving; thus, the defendant's slouching in reaction to the lights occurred after the seizure and was not a factor in determining whether the officer had reasonable suspicion to initiate the stop. *Id*. at 399–400. The circumstances here are different because defendant slouched in response to the police presence *before* Neese initiated the stop. Additionally, when Neese took a closer look, defendant appeared to have no reason for slouching except to avoid detection. To the extent that defendant's conduct was ambiguous, *Terry* permitted Neese to detain defendant "to resolve the ambiguity." *Wardlow*, 528 U.S. at 125.

Because Neese had reasonable suspicion to investigate, we need not address the government's unpreserved argument that defendant's attempt to assault Neese purged the taint of any impermissible investigatory stop. *See Wong Sun v. United States*, 371 U.S. 471, 488 (1963).

### III.

For these reasons, we affirm the district court's judgment.