NOT RECOMMENDED FOR PUBLICATION

File Name: 20a0368n.06

Case No. 19-5928

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED

Jun 22, 2020

DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| | ) | THE WESTERN DISTRICT OF |
| WILLIAM BRADNER, | ) | TENNESSEE |
| Defendant-Appellant. | ) | |
| | ) | |

BEFORE: SUTTON, COOK, and MURPHY, Circuit Judges.

SUTTON, Circuit Judge. William Bradner pleaded guilty to charges arising out of molesting his two stepdaughters. Both parties agreed Bradner's sentence would be at least 300 months. Bradner argues that the government breached the agreement by requesting a sentence of 480 months or more during his sentencing hearing. He also argues that this request amounted to prosecutorial misconduct and rendered his guilty plea involuntary, and that his 480-month sentence was substantively unreasonable. Because the government did not breach the plea agreement, engage in prosecutorial misconduct, or coerce Bradner into pleading guilty, and because Bradner's plea bars his sentencing challenge, we affirm.

In April 2018, Bradner's then-wife found pictures and videos on his laptop depicting him engaged in sexual conduct with her two daughters, Bradner's stepdaughters. One daughter was 13, and the other was 15. She reported him to local law enforcement. Investigators searched their

home and found stashes of covert cameras. They also found a data storage card in a trash can. On the card, forensic analysts found a folder named after each child. The folders contained over 400 sexually explicit photos and videos of the children, taken between October 2016 and February 2018.

The United States indicted Bradner on seven counts of sexually exploiting children, 18 U.S.C. § 2251(a)–(b), (e), and one count of possessing visual depictions of minors engaging in sexually explicit conduct, *id.* § 2252(a)(4)(B), (b)(2). Tennessee charged him with 11 counts arising out of the same conduct, including rape and aggravated sexual battery.

Bradner agreed to plead guilty to three exploitation counts and one possession count for a total sentence of "*not less than* 300 months." R. 41 at 2. At his plea hearing, that part of the agreement came up three times. The government first summarized the agreement's terms, confirming that the minimum sentence was 300 months, and "the parties will be able to argue for where the sentence should be fixed above that limit." R. 69 at 19–20. Bradner agreed that the government accurately summarized the agreement. Minutes later, the court drew Bradner's attention to that provision a second time: "[Y]ou and the Government are agreeing . . . that I sentence you to not less than 300 months." *Id.* at 22. Bradner again confirmed his understanding. Soon after, the judge mentioned the provision a third time: "I also . . . have to consider the binding agreement that you and the Government made of the not less than 300 months in making my [sentencing] decision." *Id.* at 24. "That's fine," Bradner confirmed. *Id.* at 25.

At sentencing, the government requested a sentence of 480 months or more. Bradner sought a 300-month sentence, mentioning the plea agreement to argue that, "in some fashion," the government agreed that a 300-month sentence "is appropriate." R. 66 at 32, 36. The court

sentenced Bradner to 480 months. Bradner did not object to the prosecution's conduct or the plea agreement's validity.

On appeal, Bradner asks us to vacate his conviction because the government agreed to a minimum sentence of 300 months, then argued for a sentence of 480 months or more. That counts as a bait-and-switch to his mind, and it creates three legal problems: engaging in prosecutorial misconduct, breaching the agreement, and making the agreement involuntary.

Each argument suffers from the same problem. The prosecution did exactly what the plea agreement left it free to do. Bradner and the government agreed that his sentence would be 300 months or more. And the government sought a sentence of more than 300 months. That forecloses Bradner's prosecutorial misconduct argument because he cannot show the prosecutor behaved improperly, and it forecloses his breach argument because he cannot show the prosecution welched on the plea agreement. *United States v. Wandahsega*, 924 F.3d 868, 884 (6th Cir. 2019); *United States v. Moncivais*, 492 F.3d 652, 662 (6th Cir. 2007).

As for making the agreement involuntary, a similar problem lurks. A plea is knowing and voluntary if the defendant understands the plea's "likely consequences." *Brady v. United States*, 397 U.S. 742, 748 (1970). The plea agreement's text gave Bradner plenty of notice about this "likely consequence[]." *Id*. It did not lock either party into a position about where Bradner's sentence ought to fall above the 300-month floor. And if that were not clear enough, the plea colloquy removed all doubt. Bradner acknowledged that the government correctly summarized the agreement's terms when it said "the parties will be able to argue for where the sentence should be fixed above that [300-month] limit." R. 69 at 19–20. And he acknowledged the term twice more during the next few minutes of the hearing. It's hard to imagine a better way to establish more clarity about the point.

Nor did the term amount to an illusory promise or empty the plea agreement of benefits to Bradner. *See United States v. Randolph*, 230 F.3d 243, 249–51 (6th Cir. 2000). On paper, both sides got something out of the agreement. The government dropped four counts against Bradner and agreed not to oppose a three-level reduction for acceptance of responsibility. Bradner agreed to admit to the other four counts and to receive a sentence of 300 months or more.

In context, the agreement makes even more sense. Bradner faced a serious 11-count indictment on Tennessee charges, too. Plea negotiations involved the prosecutors in both cases. Bradner's primary goal through the negotiations was to serve his sentence in federal prison rather than Tennessee's prison system so that he could take advantage of its rehabilitation programs and because he thought it would be more secure for people like him who committed crimes against children. And Bradner refused to go to trial to avoid further airing his misdeeds. He accomplished both goals through the agreement. Sure, agreeing to a minimum sentence disadvantaged Bradner rather than the United States. But nothing about his willingness to make that concession rendered the rest of the agreement worthless.

Bradner presses that the district court gave him a longer sentence than his conduct deserved. But he waived the right to make that argument. We enforce knowing and voluntary waivers of appellate rights. *United States v. Hockenberry*, 730 F.3d 645, 671 (6th Cir. 2013). Because Bradner expressly waived the right to challenge this point, we dismiss this part of the appeal.

We affirm in part and dismiss the appeal in part.